1   BROWNE WOODS & GEORGE LLP
    Eric M. George (State Bar No. 166403)
2   egeorge@bwgfirm.com
    Michael A. Bowse (State Bar No. 189659)
3   mbowse@bwgfirm.com
    450 North Roxbury Drive, Seventh Floor
4   Beverly Hills, California 90210-4231
    Tel. (310) 274-7100 / Fax (310) 275-5697
5
    Jeffrey K. Berns, Esq. (State Bar No. 131351)
6   jberns@jeffbernslaw.com
    LAW OFFICES OF JEFFREY K. BERNS
7   19510 Ventura Boulevard, Suite 200
    Tarzana, California 91356
8   Tel. (818) 961-2000 / Fax: (818) 867-4820

9   Attorneys for Plaintiffs, Nick N. Vang and Ger Ct. Moua,
    on behalf of themselves and others similarly situated
10

**NOTICE OF NONCOMPLIANCE**
See L.R. 5-133(a) & (d)(3)
Filed in Paper on

OCT 0 5 2007

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13                                      1:07-CV-1454 AWI NEW (WMW)

14  NICK N. VANG and GER CT. MOUA,          ) Case No.
    individually and on behalf of all others )
15  similarly situated,                      ) CLASS ACTION COMPLAINT
                                             ) FOR:
16                  Plaintiffs,              )
                                             ) 1.   Violations of the Truth in
17  v.                                       )      Lending Act
                                             )
18                                           ) 2.   Violation of CA Bus. & Prof.
    HOME LOAN FUNDING, INC.; and             )      Code §17200, et seq. -
19  DOES 1 through 200, inclusive,           )      "Unlawful" Business Practices
                                             )      (TILA)
20                  Defendants.              )
                                             ) 3.   Violation of CA Bus. & Prof.
21  _____ )      Code §17200, et seq. –
                                             )      "Unfair" and "Fraudulent"
22                                                  Business Practices

23                                           4.   Breach of Contract

24                                           5.   Violation of Bus. & Prof. Code
                                                  §17200, et seq. – "Unlawful"
25                                                Business Practices (Fin. Code
                                                  § 22302)
26
                                             JURY TRIAL DEMANDED
27

28

160741.1
                                -1-

1  Plaintiffs, Nick N. Vang and Ger Ct. Moua on behalf of themselves and others

2  similarly situated, (collectively "Plaintiffs") as against Defendants Home Loan

3  Funding, Inc.; and DOES 1 through 200, inclusive (collectively "Defendants"), and

4  allege as follows:

5  **JURISDICTION**

6  1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331

7  and 28 U.S.C. §1367 because this action is brought pursuant to federal statute.

8  2.    Venue is proper in this judicial district because Defendants reside in this

9  judicial district and a substantial part of the events and omissions that give rise to this

10  suit occurred here.

11  **THE PARTIES**

12  3.    Plaintiffs, Nick N. Vang and Ger Ct. Moua are, and at all times relevant

13  to this Complaint were, individuals residing in Clovis, California.  On or about May

14  19, 2005, Plaintiffs entered into an Option ARM loan agreement with Defendants for

15  the purpose of financing their home.  The Option ARM loan was secured by Plaintiffs'

16  primary residence.  Attached hereto as Exhibit 1 is a true and correct copy of the Note

17  and Truth and Lending Disclosure Form pertinent to this action.

18  4.    Plaintiffs are informed and believe and based thereon allege that

19  Defendant Home Loan Funding, Inc. is, and at all material times relevant to this

20  Complaint was, a California corporation qualified to do business in California.

21  5.    Plaintiffs are informed and believe and based thereon allege that DOES 1

22  through 100, inclusive are securitized trusts, equity funds, collateralized debt

23  obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities

24  that acted as additional lenders, loan originators and/or are assignees to the loans

25  which are the subject of this action.  Plaintiffs will seek leave of Court to replace the

26  fictitious names of these entities with their true names when they are discovered.

27  6.    The true names and capacities, whether individual, corporate, associate or

28  otherwise, of Defendants DOES 101 through 200, inclusive, and each of them, are

1    unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such
2    fictitious names. Plaintiff allege on information and belief that each Doe Defendant is
3    responsible for the actions herein alleged. Plaintiffs will seek leave of Court to amend
4    this Complaint when the names of said Doe Defendants have been ascertained.

5    7.    Plaintiffs allege on information and belief that at all times mentioned
6    herein, Defendants, and each of them, including without limitation those Defendants
7    herein sued as DOES, were acting in concert with each other, were joint participants
8    and collaborators in the acts complained of, and/or were the agents or employees of
9    the others in doing the acts complained of herein. Hereinafter, Defendants Home
10   Loan Funding, Inc. and DOES 1 through 200, inclusive, shall be referred to herein as
11   "Defendants."

12   ## GENERAL ALLEGATIONS

13   8.    This is a civil action seeking rescission as well as compensatory,
14   consequential, statutory, punitive damages and equitable relief on behalf of Plaintiffs
15   and all Class members against all Defendants.

16   9.    The instant action arises out of Defendants' failure to disclose pertinent
17   information to Plaintiffs concerning a residential mortgage loan transaction in a clear
18   and conspicuous manner, in writing, as required by the Truth and Lending Act
19   ("TILA").

20   10.   This action also concerns Defendants' unlawful, fraudulent and unfair
21   business acts or practices. Defendants engaged in a campaign of deceptive conduct
22   and concealment aimed at maximizing the number of California consumers who
23   would accept this type of loan in order to maximize Defendants' profits, even as
24   Defendants knew their conduct would cause many of these consumers to lose their
25   homes through foreclosure.

26   11.   This action also concerns Defendants' breaches of contract. Defendants
27   have failed to fulfill the obligations they expressly and impliedly assumed when they
28   entered into loan agreements with Plaintiffs and the Class.

160741.1

12.    Plaintiffs, along with thousands of other California consumers, was sold an Option ARM home loan by Defendants. Defendants' Option ARM loan is a deceptively devised financial product.

13.    The product was sold by Defendants based on the promise of a low, fixed interest rate, when in fact Defendants charged a different, much greater interest rate. Further, Defendants disguised the fact that their Option ARM loan was designed to, and did, cause borrowers' principal loan balance to increase even as they made the fixed payments required by Defendants (negative amortization). Further still, once lured into these loans, consumers cannot easily extricate themselves from them, since Defendants' Option ARM loan includes a inordinate prepayment penalty.

14.    Defendants uniformly told Plaintiff and Class members that had a 1% or similarly low interest rate (the "teaser" rate), and that the interest rate was fixed for the first several years of the loan. Plaintiffs and the Class were told that their rate "may" change after the initial, purported fixed interest period. However, they were led to believe that they could then re-finance to another home loan, and none of the information provided by Defendants indicated otherwise.

15.    Plaintiffs and the Class believed these facts to be true because that is what the Defendants wanted them to believe. Defendants aggressively marketed their Option ARM product as a fixed, low interest home loan. Defendants knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them. Defendants also knew, however, that they were marketing their product in a false and deceptive manner. While Defendants trumpeted their low, fixed rate loans to the public, Defendants knew their promise of low, fixed interest was a mirage.

16.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low, fixed interest rate. Unbeknownst to Plaintiffs and Class members, the actual interest rate they were charged on their loans was not fixed (and was in fact considerably higher than going market rates.) And, after purchasing Defendants'

160741.1

1   Option ARM loan product, Plaintiffs and Class members did not actually receive the
2   benefit of the low, teaser rate for the several year period Defendants' marketing
3   materials claimed. In fact, that teaser rate was actually applied to these loans for just
4   one (1) month. Immediately, thereafter, Defendants in every instance and for every
5   loan, increased the interest rate they charged. The now-increased interest charges
6   incurred by Plaintiffs and Class members each month exceeded the disclosed, fixed
7   payments, thereby permitting Defendants to increase the principal balance on the loans
8   in ever increasing increments, sucking the equity out of borrowers' homes and
9   increasing the size of the loans.

10      17.    In stark contrast to this reality, Defendants, through the loan documents
11  they created and supplied, stated that negative amortization was only a possibility and
12  would occur only if Plaintiffs failed to make sufficient payments. Defendants
13  concealed the fact that the loan as presented and designed, in fact, *guaranteed*
14  negative amortization. Defendants, in violation of the law, concealed the objectively
15  material fact that negative amortization would occur if Plaintiffs and the Class
16  followed the payment schedule set forth by Defendants in the loan documents. This
17  information was objectively material and necessary to make the statements made by
18  Defendants, in light of the circumstances, not misleading because only that
19  information would reveal that the loan's principal balance would increase if the
20  payment schedule was followed, thereby rendering it impossible to refinance the loan
21  at or around the time the prepayment penalty expired and the interest and payment
22  rates re-set. Although they were required to by law, Defendants failed to disclose on
23  the Truth in Lending Disclosure Form they provided that negative amortization would
24  certainly occur under the loan as designed by Defendants.

25      18.    And, once Plaintiffs and class members accepted Defendants' Option
26  ARM loan, they had no viable option by which to extricate themselves. The loan
27  agreement included a draconian pre-payment penalty, the effect of which was to
28  prevent borrowers from exiting the loan before their payment reset.

160741.1

19.    The Option ARM loans sold by Defendants to Plaintiffs and the Class all have the following uniform characteristics:

    a.    There is an initial low interest rate or "teaser" rate used to entice Plaintiffs and the class into entering into the loan. That rate is typically stated to be at or near 1%.

    b.    The loan includes a corresponding low payment schedule. The marketing of the loan with the "teaser" interest rate is intended to falsely portray to Plaintiffs and the Class that the low payments for the first several years of the loan were a result of the "teaser" rate being applied during that period.

    c.    The payment schedule Defendants provided for the first several years of the loan term is consistent with the low "teaser" interest rate Defendants promote. By calculating the payments this way, Defendants insure that if someone calculates what the payment would be at the "teaser" interest rate, it will correspond to the payment schedule. This portrayal is intended by Defendants to further mislead consumers into believing that the payments reflected on the disclosed schedule are the result of the 1% "teaser" rate actually being applied to their loans and that the payments are sufficient to cover all of the accruing interest.

    d.    Increases in the payments due on the loan are capped at 7.5% annually until negative amortization caused the principal balance to rise to 110% of what it had been at the outset of the loans at which point the payments due on the loans jumped considerably.

    e.    This loan includes a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

20.    Defendants uniformly failed to inform consumers, including Plaintiffs, in the clear and conspicuous manner required by law that the fixed "teaser" rate that

1  supposedly was applicable for the first several years of the loan was actually applied
2  for just one month. Thereafter, the true interest charged on the loans was significantly
3  higher than the promised, "teaser" rate.

4      21.    Defendants also uniformly failed to inform consumers, including
5  Plaintiffs, in the clear and conspicuous manner required by law that the payments set
6  forth in Defendants' schedule of payments were insufficient to cover the interest
7  charges actually accruing on the loan and that this was, in fact, a negative amortization
8  loan.

9      22.    Defendants also uniformly failed to inform consumers, including
10  Plaintiffs, in the clear and conspicuous manner required by law that when the principal
11  balance increased to a certain level, they would no longer have the option of making
12  the fixed interest payment amount.

13                    **CLASS ACTION ALLEGATIONS**

14      23.    Class Definition: Plaintiffs seek to bring this lawsuit as a class action
15  pursuant to Federal Rule of Civil Procedure, Rule 23, California Civil Code, Section
16  1781, *et seq.*, and California Code of Civil Procedure, Section 382 and the case law
17  thereunder. The class Plaintiffs seek to represent is defined as follows:

18              All individuals who received an Option ARM loan through
19              Defendants on their primary residence located within
20              California between October 4, 2003 and October 4, 2007.

21      24.    Ascertainable Class: The proposed Class is ascertainable in that the
22  members can be identified and located using information contained in Defendants'
23  mortgage lending records.

24      25.    Common Questions of Fact or Law: This action is suitable for class
25  treatment because common questions of fact and law predominate over individual
26  issues. Common questions include, but are not limited to, the following:

27              (1)    Whether Defendants' acts and practices violate the Truth in
28                     Lending Act;

160741.1                        -7-

1    (2)    Whether Defendants' conduct violated 12 C.F.R. § 226.17;

2    (3)    Whether Defendants' conduct violated 12 C.F.R. § 226.19;

3    (4)    Whether Defendants engaged in unfair business practices aimed at

4            deceiving Class members before and during the loan application

5            process;

6    (5)    Whether Defendants, by and through their officers, employees, and

7            agents failed to disclose that the interest rate actually charged on

8            these loans was higher than the rate represented and promised to

9            Class members;

10   (6)    Whether Defendants, by and through their officers, employees and

11           agents concealed information they were mandated to disclose under

12           TILA;

13   (7)    Whether Defendants failed to disclose the true variable nature of

14           the interest rates applied to these loans;

15   (8)    Whether Defendants failed to properly disclose the process by

16           which negative amortization occurs on these loans, ultimately

17           resulting in the recasting of the payment structure over the

18           remaining lifetime of the loans;

19   (9)    Whether Defendants' conduct in immediately raising the interest

20           rate on consumers' loans above the promised "teaser" rate so that

21           no payments were made to the principal balance constitutes a

22           breach of contract, including a breach of the covenant of good faith

23           and fair dealing;

24   (10)   Whether Defendants' marketing plan and scheme misleadingly

25           portrayed or implied that these loans were fixed rate loans, when

26           Defendants knew that only the periodic payments were fixed (for a

27           time) but that interest rates were, in fact, never "fixed;"

28

160741.1

-8-

1        (11)   Whether the terms and conditions of Defendants' Option ARM

2               home loan are unconscionable;

3        (12)   Whether all Class members are entitled to punitive damages;

4        (13)   Whether all Class members are entitled to actual damages;

5        (14)   Whether all Class members are entitled to rescission; and

6        (15)   Whether all Class members are entitled to reformation.

7      26.    Numerosity: The Class is so numerous that the individual joinder of all

8   members is impracticable under the circumstances of this case.  While the exact

9   number of class members is unknown at this time, Plaintiffs are informed and believe

10   that the entire class consists of thousands of members.

11      27.    Typicality and Adequacy: Plaintiffs' claims are typical of the claims of

12   the Class members.  Plaintiffs suffered a similar and actual injury as well as the other

13   Class members as a result of Defendants' violations of federal law and/or California

14   law that amounted to acts of unfair competition.  In addition, Plaintiffs will fairly and

15   adequately protect the interests of the members of the Class.  Plaintiffs have no

16   interests that are adverse to the interests of the other class members.

17      28.    Superiority: A class action is superior to other available means for the fair

18   and efficient adjudication of this controversy since individual joinder of all members

19   of the Class is impractical.  Class action treatment will permit a large number of

20   similarly situated persons to prosecute their common claims in a single forum

21   simultaneously, efficiently and without the unnecessary duplication of effort and

22   expense that numerous individual actions would engender.  Further, an important

23   public interest will be served by addressing the matter as a class action.  The cost to

24   the court system of adjudicating each such individual lawsuit would be substantial.

25      29.    Inconsistent or Contradictory Chances: A failure to certify the Class

26   would likely lead to inconsistent or contradictory judgments.  Individual cases could

27   result in findings that the subject language in the loan documents failed to provide

28   notice to borrowers in a clear and conspicuous manner, and other cases might find the

160741.1                          -9-

1  language was sufficient.  Defendants would then have no means to resolve the

2  differing opinions and alter the language of the agreements to be lawful.

3      30.    Injury to Potential Parties: Injury to individual Plaintiffs might also occur,

4  in that one or more of the Defendants may become insolvent, thereby preventing some

5  injured parties from recovering.  A Class certification means that all members of the

6  Class will share in any judgment awarded.

7      31.    Defendants' Conduct Was Applicable to the Entire Class:  Defendants'

8  conduct at issue in this action is the same as to all Class members.  As a result, final

9  injunctive and/or declaratory relief as to the Class as a whole is appropriate.

10                              **FIRST CAUSE OF ACTION**

11          (Violations of Truth in Lending Laws, Title 15 U.S.C.A. §1601, *et seq.*,

12                              As Against All Defendants)

13      32.    Plaintiffs reallege and incorporate the allegations contained in the

14  paragraphs above as though fully set forth herein.

15      33.    Title 15 U.S.C.A. §1601, *et seq.*, is the Federal Truth in Lending Act

16  ('TILA").  The Federal Reserve Board of Governors implements the Federal Truth in

17  Lending Act through Regulation Z (12 C.F.R. §226 ) and its Official Staff

18  Commentary.  Compliance by lenders with Regulation Z ("Reg. Z") became

19  mandatory October 1, 1982.  Likewise, Official Staff Commentary issued by the

20  Federal Reserve Board is also binding on all lenders.

21      34.    The purpose of TILA is to protect consumers.  This is stated in 12 C.F.R.

22  § 226.1, which reads:

23                  **§226.1 Authority, purpose, coverage, organization,**

24                  **enforcement and liability...**

25                  (b)    Purpose.  The purpose of this regulation is to

26                  promote the informed use of consumer credit by requiring

27                  disclosures about its terms and costs.  The regulation also

28                  gives consumers the right to cancel certain credit

1    transactions that involve a lien on a consumer's principal

2    dwelling . . .

3    35.    Reg. Z also mandates very specific disclosure requirements regarding

4    home loans with which lenders, including Defendants, must comply:

5    **§ 226.17. General disclosure requirements.**

6    (a)  Form of disclosures. (1) The creditor shall make the

7    disclosures required by this subpart clearly and

8    conspicuously in writing, in a form that the consumer may

9    keep. The disclosures shall be grouped together, shall be

10    segregated from everything else, and shall not contain any

11    information not directly related to the disclosures required

12    under § 226.18.

13    36.    The purpose of the TILA is to assure a meaningful disclosure of credit

14    terms so that the borrowers will be able to compare more readily the various credit

15    terms available to them and avoid the uninformed use of credit and to protect the

16    consumer against inaccurate and unfair credit billing practices.

17    37.    Defendants' Option ARM loan violates TILA because Defendants failed

18    to comply with the disclosure requirements mandated by Regulation Z and Official

19    Staff Commentary issued by the Federal Reserve Board.  Defendants failed in a

20    number of ways to clearly or accurately disclose the terms of the Option ARM loan to

21    Plaintiffs as Defendants were required to do under TILA.  These violations are

22    apparent on the face of the TILA Disclosure Forms.

23    38.    As such, Plaintiffs seek redress under the Truth in Lending Act.  This

24    action seeks to obtain rescission for each Class member, injunctive relief, redress,

25    restitution, disgorgement, money damages, attorneys' fees and other equitable relief

26    against Defendants for engaging in unfair or deceptive acts or practices in violation of

27    TILA.

28

160741.1

1    39.    The TILA violations committed by Defendants are more specifically
2  detailed as follows:

3  **A.    Defendants' Violation of Truth in Lending Laws for Failure to Clearly**
4  **Disclose The Actual Interest Rate**

5    40.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 required Defendants to make
6  disclosures concerning the interest rate in a clear, conspicuous and not misleading
7  manner. Defendants failed to meet these disclosure mandates.

8    41.    Defendants' disclosure in the Promissory Note concerning the interest
9  rate applied to Plaintiffs' and Class members' loans is, at best, unclear and
10  inconspicuous. At worst, it is intentionally deceptive. In either case, it is certainly
11  different from and conflicts with the interest rate information set forth by Defendants
12  in the TILA Disclosure Form.

13    42.    The interest rate set forth in the Note is the teaser rate that Defendants
14  promoted as the rate applicable to the entire initial term of the loan, but which they, in
15  fact, applied to the loan for just one month. However, Defendants do not make clear in
16  the Note or anywhere else that this low promised rate (the same rate upon which
17  Defendants base the written payment schedule provided to Plaintiffs) was actually
18  applied only for the first month of the loan. Instead, Defendants employed a
19  convoluted, confusing and circuitous methodology in describing the interest rate and
20  further concealed the variable nature of the interest rate by promoting fixed payments
21  that were based on the initial teaser rate.

22    43.    In a section of the Note different from the one identifying the teaser rate
23  as the "Interest Rate," Defendants state that the promised low interest rate might
24  change on the "change date." A description of the change that "may" occur on the
25  "change date" is found still elsewhere in the Note. The descriptive method employed
26  by Defendants in this regard is misleading and conceals that the teaser rate disappears
27  and is replaced by a much higher rate on the date on which the first loan payment is
28  due, i.e., just one month into the loan term.

44.     This language used to disclose the interest rate on the loan is anything but clear and conspicuous. It certainly cannot be easily determined, (if, in fact, it can be determined at all) when Plaintiffs and the Class would actually receive the low 1% or similar interest rate they were promised. The Note's language and organization are, instead, purposefully unclear and meant to confuse Plaintiffs, the Class and consumers.

45.     The truth is that the low, teaser rate Defendants promised was wholly illusory. Plaintiffs and Class members never received that low interest rate, or received it for only thirty days. It was instead a deception practiced on Plaintiffs and Class members by Defendants to facilitate sales of their loans to consumers.

46.     Defendants did still more to conceal the actual interest rate from Plaintiffs and the Class. The Note sets forth the amount of Plaintiffs' and Class members' initial monthly payments. That amount is equal to what the payment would be if the low interest rate promised by Defendants was actually available and being applied to the principal balance on the loans. In fact, however, the real interest rate charged on the loan by Defendants was certain to be much higher than the low, promised interest rate of 1%. The initial monthly payment amount is included in the Note to deceive consumers into falsely believing they are, in fact, receiving the teaser rate promised them.

47.     The manner in which the Defendants completed the legally-mandated TILA Disclosure Form is confusing and deceptive for much the same reason, and only reinforces the misleading statements made in the Note. It shows the scheduled payments for the first years of the loan period as being based on the low "teaser" rate Plaintiffs and Class members were promised. In truth, however, this payment schedule has no relation to the interest rate Defendants actually charged the loans, since the teaser rate was not actually the rate being charged.

48.     Taken separately and in totality, all of the unclear and contradictory information given to consumers violates the requirements placed on Defendants by TILA and Regulation Z for clear and conspicuous disclosures to a borrower.

**B.    Defendants' Violation of Truth in Lending Laws for Failure to Disclose Negative Amortization**

49.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19. Certain residential mortgage and variable-rate transactions. . . .**
>
> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . . (vii) <u>Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.</u> (Emphasis added.)

50.    These required disclosures must be made in a complete TILA Disclosure Form with the other disclosures. A completed TILA Disclosure Form must state whether the loan is a negative amortizing loan and whether unpaid interest is being added to principal.

51.    In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan and had payment caps, a definitive statement about negative amortization was required to be included in the completed TILA Disclosure Form:

<div align="center">

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

</div>

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as **negative amortization occurs** and that the **principal balance will increase**)…"[1] (Found at C.F.R. § 226.19)

52.    Defendants' Option ARM loan has a variable rate feature with payment caps. However, Defendants failed to include any reference on the mandatory TILA Disclosure Form they provided to Plaintiffs and the Class members that negative amortization would occur. There is no disclosure on that form to indicate that complying with the payment schedule provided by Defendants would result in negative amortization. The payment schedule makes no reference to negative amortization and, on the contrary, makes it appear that the payments cover both principal and interest.

53.    In fact, the only place where Defendants even inferentially reference negative amortization is in the Note. However, they mention the subject in such a way as to conceal from a reasonable person that negative amortization is a certainty, rather than a certainty. Defendants' Option ARM loan is, in fact, structured in a way that makes negative amortization a certainty. As such, Defendants' inadequate disclosure is false and misleading.

54.    Accordingly, Defendants' "disclosures" do not reveal the effect of the payment cap feature of Defendants' Option ARM, as required by law, and they certainly do not reveal that negative amortization will result from the payment cap.

---

[1] A lender violates federal law unless it complies with the Federal Reserve Board's Official Staff Commentary as well as Regulation Z and TILA. See *First National Bank of Council Bluffs, Iowa v. Office of the Comptroller of the Currency,* 956 F2d 1456 (8th Cir. 1992).

160741.1

C. **Defendants' Violation of Truth in Lending Laws by Failing to Clearly Disclose That the Initial Interest Rate is Discounted**

55. Variable rate loans are based on a "margin" and an "index." The index is ordinarily a major interest rate index, often the Prime Rate or the LIBOR exchange rate. The margin is the amount the lender charges over that rate.

56. TILA requires that, when payments required to be made on a variable rate loan are not based on the identified index and margin, there must be a separate disclosure indicating so. The disclosure must inform the borrower that the required payment is not equal to the sum of the index and the margin. Additionally, the disclosure must inform borrowers that their interest rate and payment may go up, and under what circumstances the interest rate and payment will increase. TILA and Reg. Z require the disclosure to be clear, conspicuous and separately made.

57. The Federal Reserve Board established related disclosure requirements for variable rate loans. 26 C.F.R. § 226.19 requires, among other things, disclosure of any interest rate discount.

58. The disclosures provided by Defendants herein do not comply with these requirements and, in fact, conceal that the initial "teaser" interest rate is discounted. Defendants' disclosures informed Plaintiffs and the Class that the interest rate **may** increase above the initial teaser rate. That statement is false and misleading. In reality, an increase in the interest rate charged on Plaintiffs' and Class members' loans was not just a possibility; it was an absolute certainty. This is because the initial interest rate was a discounted rate, not the ordinary rate arrived at by calculating the sum of the index and margin.

59. Had Defendants disclosed that the initial interest rate was a discounted rate not based on the sum of the margin and index, as required by TILA and Regulation Z, their scheme to conceal the fact that the loan was a negative amortization loan may not have been as successful. By failing to make that required disclosure in the manner required by law, defendants again violated TILA and Reg. Z.

**D.  Defendants' Violation of Truth in Lending Laws by Failing to Disclose the Composite Interest Rate**

60.  Defendants provided Plaintiffs and Class members with multiple, conflicting interest rates when describing the costs of this loan.  On the TILA Disclosure Form, Defendants set forth one interest rate.  But, on the Note, Defendants set forth two other, different interest rates.

61.  The official staff commentary to 226 C.F.R. § 17(C)(8) states:

*Basis of disclosures in variable-rate transactions.* The disclosures for a variable-rate transaction must be given for the full term of the transaction and must be based on the terms in effect at the time of consummation. Creditors should base the disclosures only on the initial rate and should not assume that this rate will increase. For example, in a loan with an initial rate of 10 percent and a 5 percentage points rate cap, creditors should base the disclosures on the initial rate and should not assume that this rate will increase 5 percentage points. **However, in a variable-rate transaction with a** seller buydown that is reflected in the credit contract, a consumer buydown, or **a discounted or premium rate, disclosures should not be based solely on the initial terms. In those transactions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term.** (See the commentary to §  226.17(c) for a discussion of buydown, discounted, and premium transactions and the commentary to section 226.19(a)(2) for a discussion of the redisclosure in certain residential mortgage transactions with a variable-rate feature.)

62.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite rate in variable rate loans that had a discounted initial rate. The loan sold to Plaintiffs and Class members by Defendants is a discounted variable-rate loan. Defendants failed to properly, clearly and conspicuously disclose a composite annual percentage rate on these loans and thereby committed clear and consistent violations of the TILA and Regulation Z.

63.    As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiffs and Class members have suffered injury in an amount to be determined at time of trial. Had Defendants not violated TILA, but instead properly disclosed the material terms of Defendants' Option ARM loan product, as alleged herein, Plaintiffs and Class members would not have entered into the home loan agreements which are the subject of this action with Defendants. Because Defendants failed to make proper disclosures in violation of TILA, Plaintiffs and Class members now seek redress in an amount and/or type as proved at time of trial.

## SECOND CAUSE OF ACTION

(Violation of the UCL, Cal. Bus. & Prof. Code §17200, *et seq.*, –

"Unlawful" Business Acts or Practices Predicated on Violations of TILA, As Against All Defendants)

64.    Plaintiffs reallege and incorporate the allegations contained in the paragraphs above as though fully set forth herein.

65.    California Business and Professions Code, §17200, *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

66.    A business act or practice is "unlawful" if it violates any other law, code or statute.

67.    Defendants, and each of them, engaged in unfair competition within the meaning of section 17200 by violating the TILA as detailed in Plaintiffs' First Cause of

160741.1                                    -18-

1  Action. Defendants failed to comply with the TILA disclosure requirements mandated
2  by TILA, Regulation Z and Official Staff Commentary issued by the Federal Reserve
3  Board. Defendants failed in a number of ways to clearly or accurately disclose the
4  terms of the Option ARM loan to Plaintiffs as Defendants were required to do under
5  TILA.

6      68.    Plaintiffs and Class members are direct victims of the Defendants'
7  unlawful conduct, as herein alleged, and each has suffered injury in fact, and have lost
8  money or property as a result of Defendants' unfair competition.

9  <center>**THIRD CAUSE OF ACTION**</center>

10  <center>(Violation of the UCL, Cal. Bus. & Prof. Code §17200, 17500 *et seq.*,</center>

11  <center>"Unfair" and "Fraudulent" Business Acts or Practices,</center>

12  <center>As Against All Defendants)</center>

13      69.    Plaintiffs reallege and incorporate the allegations contained in the
14  paragraphs above as though fully set forth herein.

15      70.    California Business and Professions Code, §17200, *et seq.*, also known as
16  the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition,"
17  including any unlawful, unfair, fraudulent or deceptive business act or practice as well
18  as "unfair, deceptive, untrue or misleading advertising."

19      71.    A business practice is "unfair" if is violates established public policy or if
20  it is immoral, unethical, oppressive or unscrupulous and cause injury to consumers
21  which outweighs its benefits.

22      72.    A business practice is "fraudulent" business practice is one which is likely
23  to deceive the public.

24      73.    Defendants engaged in a pattern of unfair and deceptive conduct aimed at
25  maximizing the number of borrowers who would accept their Option ARM loan.
26  Defendants, and each of them, marketed and sold Plaintiffs and the Class members a
27  deceptively devised financial product. Defendants marketed and sold their Option
28  ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner.

160741.1

1  Defendants marketed and advertised to the general public through brochures, flyers and
2  other substantially identical, common marketing material, a loan which appeared to
3  have a very low, fixed interest rate for an initial, several month period and no negative
4  amortization. Further, Defendants disguised from Plaintiffs and the Class the fact that
5  Defendants' Option ARM loan had no fixed interest rate and was designed to, and did,
6  cause negative amortization to occur.

7      74.    Defendants lured Plaintiffs and the Class into the Option ARM loan with
8  promises of low fixed interest. Once Plaintiffs and the Class were on the hook,
9  Defendants switched the interest rate charged on the loan to a much higher rate than the
10  one being advertised and promised to Plaintiffs and the Class. Thereafter, Plaintiffs
11  and the Class could not escape the loan because of the prepayment penalties imposed
12  by Defendants.

13      75.    Defendants promoted their Option ARM loan as having a low fixed
14  interest rate, typically around 1%, for the first several years of the loan period.
15  However, these representations were not truthful and were merely designed to deceive
16  consumers into entering into loan agreements with Defendants. Defendants did not tell
17  Plaintiffs or the Class members that the "teaser" rate was wholly illusory, as it would
18  never actually be applied to Plaintiffs' and Class members' outstanding loan balances.
19  Defendants also did not tell Plaintiffs or the Class members that, although their
20  payments during the initial term of the loan would be calculated on the "teaser" rate,
21  the interest that actually was accruing on their loan was an entirely different, much
22  higher rate.

23      76.    Defendants' representations and omissions created an impression that the
24  loan was a no negative amortization home loan with a very low, fixed interest rate for
25  the first several years of the loan term, after which time the low fixed rate would end.
26  Defendants' representations and omissions further created the false impression that,
27  after the initial term of the loan, Plaintiffs and the Class could refinance, thereby
28  avoiding the higher interest rate after the loan "adjusted." In reality, Plaintiffs and the

160741.1                           -20-

1  Class could not avoid the higher interest rates in that manner since: (1) the interest rate
2  adjusted immediately after the loan began, and (2) the loan was designed to increase the
3  principal balance, thereby locking consumers in.

4      77.    Defendants aggressively sold their product as a fixed low interest home
5  loan. Defendants knew that if marketed in such a manner, their Option ARM loan
6  product would be a hugely popular and profitable product for them. Defendants also
7  knew, however, that they were marketing their product in a false and deceptive manner.

8      78.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but
9  not a low, fixed interest rate. Unbeknownst to Plaintiffs and the Class members, the
10  actual interest rate they were charged on their loans was not fixed. After purchasing
11  Defendants' Option ARM loan product, Plaintiffs and the Class members never
12  actually received the benefit of the low advertised interest rate. Immediately, after the
13  loan term began, Defendants in every instance and for every loan increased the interest
14  rate they charged consumers. And, once Plaintiffs and the Class members accepted
15  Defendants' Option ARM loan, they had no viable option to extricate themselves.
16  These loan agreements included a draconian pre-payment penalty.

17      79.    Defendants' conduct in this regard was deceptive and unfair. Defendants
18  initiated this scheme in order to maximize the amount of the loans issued to consumers
19  and to maximize Defendants' profits.

20      80.    Plaintiffs and the Class are direct victims of the Defendants' unlawful
21  conduct, as herein alleged, and each has suffered injury in fact, and have lost money or
22  property as a result of Defendants' unfair competition.

23              **FOURTH CAUSE OF ACTION**

24              (Breach of Contract, As Against All Defendants)

25      81.    Plaintiffs reallege and incorporate the allegations contained in the
26  paragraphs above as though fully set forth herein.

27      82.    Defendants entered into written agreements with Plaintiffs and Class
28  members based on representations Defendants made indirectly and directly to Plaintiffs

160741.1                        -21-

1 and the Class about the terms of their loans. Defendants had obligations to Plaintiffs

2 and the Class as set forth in those agreements and as implied by law.

3      83.   Defendants impliedly and expressly represented to Plaintiffs and the Class

4 that they would provide loans secured by Plaintiffs' and Class members' homes, and

5 that the loans would have a low, fixed interest rate for a period of several years.

6      84.   Defendants expressly and impliedly agreed that, if Plaintiffs and the Class

7 made their monthly payments in the amount prescribed by Defendants, no negative

8 amortization would occur. The written payment schedules prepared by Defendants

9 include amounts exactly equal to what would be required to pay all interest accruing on

10 the loan if the interest actually charged on the loan was the low "teaser" interest rate

11 promised.

12      85.   In breach of their express and implied obligations, Defendants .

13 immediately raised Plaintiffs' and Class members' interest rate, caused the accruing

14 interest to exceed the scheduled payment amounts and imposed negative amortization.

15 In fact, because Defendants charged more interest than was agreed to, the total payment

16 was insufficient to cover the interest charge, and the principal balance increased.

17      86.   Defendants unfairly interfered with Plaintiffs' and Class members' rights

18 to receive the benefits of the contract. These loans will cost Plaintiffs and Class

19 members thousands of dollars more than represented by Defendants. Plaintiffs and the

20 Class did not receive the fixed low interest rate home loan promised them by

21 Defendants. Defendants have caused Plaintiffs and Class members to lose equity in

22 their homes, thereby inflicting damage on Plaintiffs and the Class.

23      87.   Plaintiffs and the Class, on the other hand, did all of those things the

24 contract required of them. Plaintiffs and Class members made monthly payments in the

25 amount required by the terms of the Note and reflected in the payment schedule

26 prepared by Defendants.

27      88.   As a result of Defendants' breach of the agreement, Plaintiffs and the

28 Class have suffered harm. Plaintiffs and the Class members have incurred additional

160741.1

1  charges to their principal loan balance. Plaintiffs and Class members have incurred and
2  will continue to incur additional interest charges on the principal loan balance and
3  surplus interest added to their principal loan balances.

## FIFTH CAUSE OF ACTION

(Violation of the UCL, Cal. Bus. & Prof. Code §17200, *et seq*., –

"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code

§ 22302, As Against All Defendants)

8      89.    Plaintiffs reallege and incorporate the allegations contained in the
9  paragraphs above as though fully set forth herein.

10     90.    California Business and Professions Code, §17200, *et seq*., also known as
11 the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition,"
12 including any unlawful, unfair, fraudulent or deceptive business act or practice as well
13 as "unfair, deceptive, untrue or misleading advertising."

14     91.    A business act or practice is "unlawful" if it violates any other law, code or
15 statute.

16     92.    Defendants, and each of them, engaged in unfair competition within the
17 meaning of section 17200 by violating California Financial Code § 22302.

18     93.    California Financial Code § 22302 applies to consumer loan contracts. It
19 states that a loan found to be unconscionable pursuant to Section 1670.5 of the
20 California Civil Code shall be deemed to be a violation of Financial Code § 22302.

21     94.    The loan contracts prepared by Defendants and entered into between
22 Plaintiffs and Class members and Defendants are unconscionable pursuant to Section
23 1670.5 of the Civil Code.

24     95.    The relative bargaining power between Plaintiffs and Class members and
25 Defendants was unequal. Plaintiffs and Class members could not negotiate or change
26 any of the particular terms related to the loan and drafted by Defendants. To secure the
27 loan, Plaintiffs and Class members were given no choice but to make payments as

28

160741.1

1 | described in the payment schedule and to accept and sign all the associated documents,
2 | which number over one hundred pages.

3 | 96. The period of time during which Defendants actually provided Plaintiffs
4 | and Class members with the promised low interest rate was for only one month.
5 | Because Defendants packaged the documents in such a manner as to lead Plaintiffs and
6 | Class members to believe that they had a low interest rate and therefore low payments
7 | for several years, Plaintiffs and Class members have ended up owing significantly more
8 | than before they started, even though they have made all of their loan payments when
9 | due.

10 | 97. Defendants drafted these loan documents for use on tens of thousands of
11 | individuals. The loan process was such that individual terms could not be modified.
12 | Defendants' policy and practice was to deliver to Plaintiffs and the Class the documents
13 | evidencing the loans at the time of signature. The loan process offered by Defendants
14 | did not permit for any meaningful negotiation of terms or even review of the loan
15 | documents at the time of execution.

16 | 98. Defendants further inserted into the loan documents a prepayment penalty
17 | that has as it sole purpose to cause Plaintiffs and Class members to continue under the
18 | terms of this loans or lose thousands of dollars if they tried to refinance the loans.

19 | 99. The loans as drafted by Defendants were so "one-sided" that it could only
20 | lead Plaintiffs and the Class to one result, which was a significant loss of money and/or
21 | value. As a result of Defendants' unconscionable behavior, Plaintiffs and the Class
22 | have suffered direct and actual injury.

23 | 100. Because Defendants' Option ARM loan contract is unconscionable
24 | pursuant to Section 1670.5 of the Civil Code, Defendants' Option ARM loan violates
25 | Financial Code § 22302 and constitutes a violation of the UCL.

26 | 101. Plaintiffs and the Class are direct victims of the Defendants' unlawful
27 | conduct, as herein alleged, and each has suffered injury in fact, and have lost money or
28 | property as a result of Defendants' unfair competition.

160741.1

-24-

CLASS ACTION COMPLAINT

1

## **PRAYER FOR RELIEF**

2       WHEREFORE, Plaintiffs and all Class members pray for judgment against each

3  Defendant, jointly and severally, as follows:

4       1.      For actual damages according to proof;

5       2.      For compensatory damages where appropriate;

6       3.      For consequential damages where appropriate;

7       4.      For punitive damages where appropriate;

8       5.      For rescission;

9       6.      For reasonable attorneys' fees and costs; and,

10      7.      For statutory damages;

11      8.      For an order certifying this case as class action and appointing Plaintiffs

12              and their counsel to represent the Class;

13      9.      For an order requiring Defendants to disgorge all profits obtained as a

14              result of their unfair competition;

15      10.     For equitable relief, including restitution; and

16      11.     For such other relief as is just and proper.

17

18  Dated:  October 4, 2007                    BROWNE WOODS & GEORGE LLP
                                              Eric M. George
19                                            Michael A. Bowse

20                                            LAW OFFICES OF
                                              JEFFREY K. BERNS
21                                            Jeffrey K. Berns

22

23                                            By
24                                                 Michael A. Bowse

25                                            Attorneys for Plaintiffs Nick N. Vang and
                                              Ger Ct. Moua, on behalf of themselves
26                                            and others similarly situated

27

28

160741.1
                                   -25-
                      CLASS ACTION COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: October 4, 2007

BROWNE WOODS & GEORGE LLP
Eric M. George
Michael A. Bowse

LAW OFFICES OF
JEFFREY K. BERNS
Jeffrey K. Berns

By _____
Michael A. Bowse

Attorneys for Plaintiffs Nick N. Vang and Ger Ct. Moua, on behalf of themselves and others similarly situated

160741.1

CLASS ACTION COMPLAINT