1  `

2

3

4

5

6

7

8  IN THE UNITED STATES DISTRICT COURT FOR THE

9  EASTERN DISTRICT OF CALIFORNIA

10 NICK N. YANG and GER CT. MOUA,    )    CV F 07-1454 AWI GSA
   individually and on behalf of others   )
   similarly situated,                    )    ORDER ON DEFENDANTS'
11                                         )    MOTIONS TO DISMISS
                    Plaintiffs,            )    PLAINTIFFS' THIRD
12                                         )    AMENDED COMPLAINT
           v.                              )
13                                         )
   HOME LOAN FUNDING, INC., and            )
14 DOES 1 through 20, inclusive,           )    Documents # 97 and 101
                                           )
15                  Defendants             )
   _____)

16

17

18         This is a class action pursuant to the Truth In Lending Act against two named

19 financial institutions, Home Loan Funding, Inc., and One West Bank, F.B.S., and several Doe

20 defendants (collectively, "Defendants") who allegedly originated, serviced, purchased/sold or

21 were otherwise involved in promoting or marketing a type of home mortgage loan called an

22 Option Adjustable Rate Mortgage ("Option ARM").  Plaintiffs' Third Amended Class Action

23 Complaint (the "TAC") names as defendants Home Loan Funding, Inc. ("HLF"), and

24 defendant One West Bank, F.S.B. ("One West"), which was previously sued as Doe

25 defendant #3.  The named plaintiffs in this action, Nick N. Vang and Ger Ct. Moua

26 ("Plaintiffs") are residents of Clovis, California.  In the instant motion, defendant One West

27 moves to dismiss the complaint in its entirety as to it.  Federal subject matter jurisdiction

28 exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

**PROCEDURAL HISTORY**

The original complaint against HLF was filed on October 5, 2007.  The first amended complaint, filed on October 26, 2007, alleged claims against HLF on behalf of the named plaintiffs and on behalf of a class of plaintiffs similarly situated.  The Second Amended Complaint was filed on November 1, 2008, pursuant to the court order granting Plaintiffs' motion to further amend.  The Second Amended Complaint added as a named defendant IndyMac Bank, F.S.B.  Defendant IndyMac Bank failed and went into receivership.  On November 12, 2008, the Federal Deposit Insurance Corporation ("FDIC"), in its role as receiver of IndyMac Bank, successfully moved to dismiss all claims as to it on the ground the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1821(d)(12) ("FIRREA") imposed a requirement for the exhaustion of administrative remedies as a precondition of the court's jurisdiction over claims against a bank in receivership.  Plaintiffs' claims against IndyMack Bank were dismissed without prejudice.

Plaintiffs' TAC was filed on August 27, 2009, pursuant to the court's order granting leave to further amend,.  The TAC named One West as a defendant for the first time, and also named IBM Holdco Co., LLC ("Holdco").  Holdco is the parent company of One West Bank Group LLC which is the parent company of One West bank.  One West moved to dismiss the TAC on October 22, 2009.  Doc. # 97.  Defendant Holdco moved to dismiss the TAC as to it on the same date.  Pursuant to Plaintiffs' motion, the court dismissed Holdco without prejudice on November 16, 2009.  Plaintiffs' opposition to One West's motion to dismiss was filed on November 11, 2009.  One West's reply was filed on November 30, 2009.  On December 3, 2009, the court vacated the hearing date scheduled for December 7, 2009, and took the matter under submission as of that date.

**FACTUAL BACKGROUND**

Both the named Plaintiffs and the proposed class of plaintiffs consist of individuals who obtained mortgage loans called Option Adjustable Rate Mortgages, or "Option -

ARM's."  The TAC alleges defendant HLF originated the Option-ARM's at issue in this action and sold them to Indymac Bank.  When Indymac Bank failed, its loans were assigned to its successor, Indymac Federal Bank, which sold substantially all of the loans to defendant One West Bank.  The TAC alleges that "HLF, in concert with Indymac Bank, FSB and certain of the Doe Defendants, created, approved, sold, controlled and/or dictated the terms of the Option ARM loans that are the subject of this complaint."  Doc. # 90 at ¶ 10.  The TAC alleges the following were characteristics of all of the Option ARM loans:

> (i) the Monthly Payment Amount stated in the Note is based upon a low "teaser" interest rate which ranges from 1% to 3%; (ii) the payment schedule listed in the [Truth in Lending Disclosure Statement ("TLDS")], for the first 3 - 5 years of the Note is based upon a fully amortizing payment at the "teaser" interest rate; (iii) the interest rate "adjusts" after only one month to a rate which is the sum of the "index" and the "margin"; and (iv) after the first 3-5 years, the amount of the monthly payments increases.

Doc. # 90 at ¶ 21.

The TAC alleges that Defendants knew "that for Plaintiffs' and Class Members' loans, the sum of the index and the margin would necessarily result in an interest rate that always exceeded the "teaser" rate by several percentage points.  As a result, after only one month, the interest accruing on the note more than doubled . . ." resulting in a monthly interest on the loan that was greater than the scheduled payment amount.  The difference between the amount of interest owed at the new rate and the amount payed according to the schedule of payments was added to the balance owed on the loan resulting in a "reverse amortization" of the loan.  Plaintiffs allege that because the margin rate was always greater than the "teaser" rate, the loans were designed to, and always would, cause negative amortization.  Doc. # 90 at ¶ 22.

Plaintiffs allege six claims for relief.  The first alleges violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. against all Defendants.  In particular, the TAC alleges there were material omissions in the information Defendants were required to disclose to Plaintiffs.  The TAC alleges that Defendants made material omissions by:

(1) failing to disclose that negative amortization was certain to occur; (2) establishing a payment schedule that was not based on the annual percentage rate ("APR"), but rather an interest rate that applied for at most 30 days; (3) listing in the TILDS an APR having no relation to the monthly payment listed for the first two to five years; (4) failing to disclose that the initial interest rate listed in the Note was discounted; and (5) failing to disclose the certainty of negative amortization in the Loan Documents provided to Plaintiffs and Class Members before they entered into the Loan Documents.

Doc.# 90 at ¶ 49.[1]

Plaintiffs' second claim for relief alleges Fraudulent Omissions under California common law against all Defendants.  Plaintiffs' second claim essentially alleges that Defedants failed to clearly and conspicuously disclose items 1, 2, and 4 form the list of Material Omissions and that Defendants failed to disclose the applicable annual percentage rate.  Plaintiffs allege that "[t]his Option ARM loan scheme of stating only partially true facts and omitting important material information was purposefull and intentionally devised in order to deceive consumers into believing that these loans would provide a low-interest rate loan for the first three to five years of the Note and that if they made their payments according to the payment schedule provided their payments would be sufficient to pay both principal and interest."  Doc. # 90 at ¶ 85.

Plaintiffs' third claim for relief alleges violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. against all Defendants.  Plaintiffs' fourth claim for relief alleges breach of contract under California common law, also against all Defendants.  Plaintiffs' fifth and sixth claims for relief allege unjust enrichment and seeks declaratory judgment, respectively, against defendant OneWest.  Significantly, for purposes of this motion, Plaintiffs' and Class Members seek rescission of their mortgages pursuant to the Truth in Lending Act.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

---

[1]  Hereinafter, the term "Material Omissions" refers to the foregoing list of 5 items.

can be based on the failure to allege a cognizable legal theory or the failure to allege

sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc.,

749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule

12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief

above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

("Twombly").  While a court considering a motion to dismiss must accept as true the

allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425

U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party

opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v.

McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be

factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do").  The pleading standard

set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the

assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than conclusions, are not entitled to
> the assumption of truth.  While legal conclusions can provide the framework
> of a complaint, they must be supported by factual allegations.  When there are
> well-pleaded factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at

1950).

## DISCUSSION

### I.  Failure to Make Factual Disclosures Required by TILA

Plaintiffs allege in their first claim for relief that Defendants failed to make necessary

5

disclosures pursuant to TILA and that they are entitled to both rescission and damages. Defendants contend first that rescission is not an available remedy, and second, that Plaintiffs' damages claim under TILA is time -barred.

### A. *Availability of Remedy of Rescission*

Section 1635 of Title 28 of the United States Code provides that an obligor of a credit transaction may, within stated time limits, rescind the credit transaction where the creditor obtains or retains a security interest "in any property which is used as the principal dwelling of the person to whom credit is extended." 28 U.S.C. § (a).  Subdivision (e) sets forth exceptions to credit transactions to which the right of rescission would otherwise attach. Pertinent to Defendants' motion to dismiss, subsection (e)(1) exempts the rescission provisions from this section with respect to "residential mortgage transaction[s] as defined in section 1602(w) of this title."  Section 1602(w) defines a "residential mortgage transaction" as a mortgage transaction where the security interest "is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  In other words, TILA provides a right of rescission for credit transactions where the transaction is secured by the creditor's principal dwelling place *except* where the loan funds the purchase money for the principal dwelling place.  Significant to this discussion, subdivision (e)(2) of 15 U.S.C. § 1653 also exempts from the right of rescission:

> . . . a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property.

Plaintiffs do not dispute the legal basis for Defendants' contention that rescission is not available where the loan is for purchase money for a principal place of dwelling or where the loan is a straight refinance or consolidation with no new advances in credit.  Rather, Plaintiffs argue that the TAC's use of the "finance" incorporates the word "refinance" and is therefore ambiguous with respect to whether the loans at issue were purchase money loans or refinancing loans subject to rescission.  In addition, Plaintiffs point out that they used the

word "refinance" at paragraph 24 of the TAC when they described the loans taken out by Plaintiffs and Class Members.  As Defendants point out in their reply, Plaintiffs stated in ¶ 4 of the TAC that Plaintiffs entered into the Option ARM loans "for the purpose of financing their home."  Doc. 90 at ¶ 4.

Because the motion before the court is a motion to dismiss, the court is required to construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins, 395 U.S. at 421.  The court has reviewed the TAC and can find no other reference to the purpose of the loans in question other than those already referenced, nor can the court find any context that would tend to support a finding that the loans in question were or were not purchase money loans.  The court finds Plaintiffs' pleading ambiguous with respect to the purpose of the loans.  Further, the court finds that, in addition to the ambiguity in Plaintiffs' TAC, the parties seem to be in disagreement as to the facts.  Based on these findings the court must resolve the issue in Plaintiffs' favor for the time being.  Defendants' motion to dismiss will be denied without prejudice to the extent that motion is based on the contention that Plaintiffs' have failed to allege facts sufficient to support a claim for rescission under TILA.

In their reply brief, Defendants argue for the first time that the court lacks subject matter jurisdiction over Plaintiffs' rescission claim because the claim is barred by the three-year statute of repose imposed by 15 U.S.C. § 1635(f).  This court abides by the well-established general rule that an argument cannot be raised for the first time in a reply brief.  See Lincoln Gen. Ins.Co. v. Access Claims Adm'rs, Inc., 596 F.Supp.2d 1351, 1372 n.10 (E.D. Cal.2009) (citing Von Brimer v. Whirlpool Corp., 536 F.2d 838, 846 (9th Cir.1976)).  The court will therefore disregard Defendants' argument regarding time limits as to Plaintiffs' rescission claim for purposes of this motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.  Damage Claims under TILA**

**1.  Equitable Tolling Applies**

Defendants contend Plaintiffs' damage claims are barred by TILA's one-year statute of limitations.  As Defendants point out, 15 U.S.C. § 1640(e) provides that any claim for damages must be brought "within one year from the date of occurrence of the violation." Plaintiffs contend that the running of the one-year statute of limitations is subject to equitable tolling and that the issue of equitable tolling cannot be resolved on the face of the pleadings. See Plaintiffs' Opposition, Doc. # 104 at 16: 22-24 (citing Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9 Cir. 2004), for the proposition that issues of equitable tolling cannot generally be resolved on a Rule 12(b)(6) motion to dismiss because factual issues are involved).  Defendants counter Plaintiffs' equitable tolling argument in their reply by arguing that equitable tolling does not apply where, as here, the plaintiff admits that the TILA violation was evident on the face of the loan documents.

In King v. State of California, 784 F.2d 910 (9th Cir. 1986), the Ninth Circuit set forth the rules regarding accrual of claims under TILA and the applicability of equitable tolling as follows:

> [W]e hold that the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.  Therefore, as a general rule, the limitations period starts at the consummation of the transaction.  The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

Id. at 915.

A motion to dismiss based on the running of a statute of limitations may be raised "where 'the running of the statute is apparent from the face of the complaint,' and the motion should be granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.' [Citation.]" Plascencia v.

Lending 1st Mortgage, 583 F.Supp.2d 1090, 1097 (N.D. Cal. 2008) (quoting Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir. 1987)).

Defendants argue that equitable tolling does not apply because the TAC admits by allegation that Defendants' violation of the disclosure provisions of TILA are "apparent on the face of the loan documents."   Defendants' contention conflates the technical violation of TILA provisions with notice of violation.   As clearly set forth in King, courts of this circuit are bound to the rule that the time for the running of the statute commences with the consummation of the loan agreement.   However, Kiing also clearly establishes that the running of the limitations is suspended until such time as the plaintiff knew or should reasonably have known of the violation.   King, 784 F.2d at 915.   Logic dictates that where, as here, the violation complained of consists of non-disclosure, there can be no notice of the term or terms that were not disclosed until those terms are imposed on the loan.   Where the violation alleged is non-disclosure of material terms of the loan, the apparent nature of the TILA violations on the face of the loan documents must be understood to mean that the absence of necessary disclosures can be ascertained by retrospective examination of the loan documents in light of the conditions that were later imposed.

Courts of this circuit have shown some variation with respect to their approach to how the burdens of proof are to be allocated when a statute of limits defense is pled. Compare Plascencia, 583 F.Supp.2d at 1097 (dismissal on statute of limitations grounds only appropriate where "the running of the statute is apparent from the face of the complaint"), with Wong v. American Servicing Co., 2009 WL 5113516 (E.D. Cal. 2009) at *4 (dismissal appropriate where complaint fails to allege how defendant concealed true facts or how plaintiff could not otherwise have discovered violation).   The court need not address this issue, however, because in the instant case, the court finds the complaint alleges sufficient facts to explain why the limitations period should be equitably tolled.

At paragraph 26 of the TAC, Plaintiff alleges:

9

1

> Plaintiffs and Class Members were not informed of the sharp increase
> in the interest rate, and the fact that their monthly payments were not enough
> to pay the interest accruing on the loan, until they had made multiple payments
> following the closing of the loan, at which time they would receive a
> statement showing that the principal balance had increased with each month
> that had passed since the loan closed, despite the fact that the borrower had
> made all payments as scheduled.  Had Defendants disclosed this material
> information, Plaintiffs and Class Members would not have purchased the
> subject Option ARM loans.

Doc. # 90 at ¶ 26.

The court recognizes the ambiguities in Plaintiff's pleading.  Plaintiffs allege they made "multiple payments" before they received a statement showing the increase in loan principal.  How many payments and how much time are, at this point, indeterminate.  Plaintiffs' allegations do, however, place the facts of this case closer to those alleged in Plascencia than in Wong.  Here, as in Plascencia, the allegations provide sufficient information as to the reason that notice of the violation(s) was not available at the time the loan agreements were consummated.  As the court in Plascencia noted, "[t]he issue of equitable tolling must be considered when 'the complaint, liberally construed in light of our"notice pleading" system, adequately alleges facts showing the *potential* applicability of the equitable tolling doctrine.' [Citation.]" 583 F.Supp.2d at 1097 (quoting Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993).

Although it is clear Plaintiffs have not pled facts sufficient to establish any particular amount of time the statute of limitations should be tolled, the court finds Plaintiffs have pled facts sufficient to show at least the potential applicability of equitable tolling.  For purposes of the instant motion to dismiss, that showing is sufficient to defeat the motion.

### *2.  Relation Back*

Defendants argue for the first time in their reply brief that, even if equitable tolling does apply to Plaintiff's such tolling cannot be applied to Plaintiff's action against One West because the Plaintiffs' complaint cannot "relate back" to the original date of filing as to One West because such relation back would offend rule 15(c) of the Federal Rules of Civil

10

Procedure.  As above, the court declines to consider Defendants' argument which is raised for the first time in their reply brief.

## II.  Preemptive Effect of HOLA on Plaintiffs' Unfair Competition and for Fraudulent Omissions Claims

Defendants move to dismiss Plaintiffs' second claim for relief for fraudulent omission under California common law and Plaintiffs' third claim for relief under California Business and Professional Code § 17200 on the ground both claims are preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. § 1464 ("HOLA").  "Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. 12 U.S.C. § 1464.  As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2."  Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1005 (9th Cir. 2008).  The preemption statement in 12 C.F.R. § 560.2 begins by declaring that "OTS hereby occupies the entire field of lending regulation for federal savings associations."  Id.  Among the state regulations that are expressly preempted by OTS's preemption statement are that purport to regulate required disclosures.  See 12 C.F.R. § 560.2(b)(9).

Plaintiffs contend that HOLA does not apply to preempt Plaintiffs' state law claims because the originator of the loans in question, HLF, is not a federally chartered thrift and does not, therefore, come within the preemptive reach of HOLA.  Plaintiffs contend that, because the loans in question that were originated by HLF were ultimately transferred to Defendant One West by means of assignment, One West "stands in the shoes" of HLF for purposes of claims and defenses regarding the loans.  Defendants do not dispute that HLF is not a federally chartered thrift institution, nor do they dispute that the subject loans were ultimately assigned to One West.

"A general principle of assignment provides that the assignee steps into the shoes of the assignor upon assignment of the interest and takes the assignment subject to the defenses

11

assertable against the assignor. RESTATEMENT (SECOND) OF CONTRACTS § 336 (1981); see also, 29 WILLISTON ON CONTRACTS § 74:47 (4th ed.2003) ('It has been held repeatedly that the assignee 'stands in the shoes' of the assignor ....')." Olsen v. United States, — F.Supp.2d —, 2009 WL 3188423 (2009 E.D. Wash) at *6. Thus, absent countervailing authority, the court must conclude that the loans that are the subject of Plaintiffs' action against HLF are subject to the same claims and defenses after assignment to One West.

The sole authority Defendants cite to support their contention that HOLA does preempt actions under state law against the assignee of a loan, Aguayo v. U.S.Bank, – F.Supp.2d –, 2009 WL 3149607 (S.C. Cal. 2009), does not support Defendants' contention. In Aguayo, the defendant, a national bank subject to regulation under the National Bank Act, successfully moved to dismiss state law claims against it where the plaintiff had asserted state law claims against the defendant based on actions by the defendant bank that were in violation of state statutes. Id. at *7. The plaintiff in Aguayo had taken out a loan with a local automobile dealership that was subsequently assigned to the defendant bank. When the bank instituted repossession proceedings in violation of state law, the plaintiff sued. The plaintiff in Aguayo argued that, because plaintiff could have asserted state law claims against the car dealership that originated the loan, the assignment of the loan to U.S. Bank should subject the bank to the same liability as could have been asserted against the car dealership. Id. at *3.

The question presented to the district court in Aguayo, was whether the state's ability to regulate survives preemption where the entity to be regulated is an assignee of a loan originated by a state entity that would have been subject to such regulation. This is not what is at question in the present case. Plaintiffs here are not attempting to regulate the conduct of the federally chartered institution. Plaintiffs are not suing One West because of acts committed by One West nor are Plaintiffs suing One West because One West purchased the loans in question. Plaintiffs are suing One West because One West is the holder in due course of loans that were subject to claims and defenses under state law at the time of their

origination.  It is Plaintiffs' contention that those loans remain subject to the same state law claims and defenses regardless of the fact the loans were assigned to an institution that is subject to federal regulation under HOLA.  Neither <u>Arguayo</u> or any other authority cited by Defendants supports a contrary contention.

As Defendants point out, 12 C.F.R. § 560.2(b) sets forth the scope of activities that state law may not regulate.  These activities include "Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations [. . .] or other credit-related documents . . . ." §560.2(b)(9).  As well, state laws relating to "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" are preempted.  §560.2(b)(10).  As discussed above, One West is not being sued for its conduct with respect to any of the activities listed, it is being sued because of its status as holder in due course of loans that were originated by an entity that was not subject to regulation under HOLA at the time of loan origination.  It is important to note in this regard that the court's conclusion as to the issue of preemption under HOLA is based on its understanding that One West's liability is limited to and described by the claims and defenses that may be asserted against the loans.

The court has reviewed Plaintiffs' second and third claims for relief for fraudulent omissions and for violation of California's Unfair Competition Law, respectively.  Both claims are alleged against all Defendants and neither claim alleges that One West committed any particular acts.  With respect to One West, the TAC alleges only that One West received the loans by assignment and that One West was aware of the terms and conditions of the loans in question at the time the loans were assigned.  The court recognizes that, to the extent Plaintiffs' claims against One West attempt to impose liability under state law against One West for acts actually committed by One West that fall within the preemptive scope of 12 C.F.R. § 560.2, those claims would be held preempted.  At this point in the proceedings, Defendants as the moving party are burdened to demonstrate that they are not liable as a

matter of law with respect to Plaintiffs' second and third claims for relief because of HOMLA preemption.  Defendants have failed to adequately support their claim and their motion to dismiss Plaintiffs' second and third claims for relief will be denied as to that ground.

**III.  TILA and Plaintiffs' Unfair Competition Law Claim**

The court has determination that the loans assigned to One West are subject to the same claims and defenses as would have been the case at the time they were originated by HLA.  While this means that Plaintiffs' state law claims against One West are not preempted by HOLA to the extent those claims could have been asserted against HLF, this does not mean that at least some of Plaintiffs' state law claims may be subject to preemption.  While it appears undisputed that HOLA did not apply to HLF on account of its status as a state-regulated institution, there appears to be no dispute that the provisions of TILA did apply to HLF at the time of loan origination.  TILA contains preemption provisions separate and apart from those set forth in HOLA.  The question presented here is whether TILA, rather than HOLA preempts Plaintiffs' claim for violation of California's Unfair Competition Law.

As assignee of loans that were subject to regulation under TILA at the time of their origination, the extent to which One West is subject to the same claims and defenses as could be asserted against the originator of the loans is set forth at 15 U.S.C. § 1641.  Subject to certain limitations not applicable here:

> any civil action for a violation of this subchapter or proceeding under 1607 of this title which may be brought against a creditpr may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment is involuntary.

15 U.S.C. § 1641(a).  In addition, subsection (c) provides that any right of rescission is unaffected by the assignment, and subsection(d)(2) limits the amount recoverable against the assignee.  Because Plaintiffs have adequately alleged that the violation of TILA disclosure provisions is apparent on the face of the disclosure documents, One West, as assignee of the

14

loans is subject to the same claims and defenses that could be asserted against HLF, subject to the limitations set forth in subsection 1641(d)(2).

Defendants' contentions with regard to preemption appear somewhat confused. Defendants rely primarily on Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001 (9th Cir. 2008) ("Silvas") to support their contention that Plaintiffs' claims predicated on violation of California Unfair Competition Law ("UCL"), Business and Professions Code § 17200 are preempted by federal law.  In Silvas, the plaintiff sued a federally chartered savings and loan association under California's UCL alleging violation of TILA as the predicate offense.  The Silvas court applied a preemption analysis based on the preemptive provisions of 12 C.F.R. § 560.2 that were promulgated by the Office of Thrift Supervision pursuant to HOLA.  Id. at 1005.  As previously discussed, Plaintiffs' complaint alleges, and Defendants have not disputed, that HLF is/was a California corporation not chartered by the Office of Thrift Supervision and therefore not subject to HOLA.  Since there is no basis at this point to support a finding that HOLA applies generally to the loans that were originated by a non-federally chartered institution, there is also no basis to apply the analysis or findings of the Silvas court to the instant case.

TILA preempts state law claims pursuant to 15 U.S.C. § 1610.  Basically, the preemption provisions of TILA do not preempt state law unless the state law is inconsistent with TILA.  Silvas, 514 F.3d at 1007.  As the analysis in Silvas suggests, the preemptive force of TILA is less extensive than that of HOLA and where both preemptive statutes might apply, TILA does not trump HOLA.  Id.  Plaintiffs' allegation of violation of California's UCL raises two issues for purposes of this discussion; the first is whether California's UCL can be used to extend the statute of limitations for TILA violations, the second is whether the complaint adequately alleges fraud as a predicate act under the UCL.

In dictum, the Silvas court suggested that a plaintiff may not go outside the statutes of limitations provided in TILA by alleging violation of TILA as the predicate act in a clam for

15

violation of California's UCL.  While this court is not aware of any case specifically holding

that violation of TILA may not be alleged as a predicate act for purposes of a claim under

California's UCL, this court and other courts of this circuit have consistently held that the

allegation of violation of TILA under the UCL does not serve to expand the statute of

limitations beyond the time period provided in TILA.  See, e.g., Santos v. Countrywide Home

Loans, 2009 WL 2500710 (E.D. Cal. 2009); Champlaie v. BAC Home Loans Servicing, 2009

WL 3429622 (E.D. Cal. 2009).

   With regard to other of Plaintiffs' claims serving as predicates for claims under

California's UCL, at least one court of this circuit has concluded that while TILA does

preempt state claims based on required written information, i.e. on deficient or false TILDS,

TILA does not regulate oral representations.  See Kajitani v. Downey Savings & Loan Ass'n,

647 F.Supp.2d 1208, 1220 (D.Hawai'i 2008).  Thus, to the extent that Plaintiffs' claims for

fraud are based on false or misleading *oral* representations, such claims have been held not

preempted by TILA.  See id.

   The court has examined Plaintiffs' TAC.  When the court construes the allegations in

the complaint liberally and resolves all ambiguities in Plaintiffs' favor, the court cannot rule

out the possibility that Plaintiffs' fraud claims rest in part on allegation of oral

misrepresentations or oral omissions amounting to fraud under California law.  To the extent

Plaintiffs' fraud claim may be based on allegations of oral misrepresentations amounting to

fraud, such claims may not be dismissed.  To the extent Plaintiffs' claim under

California's UCL is based on allegations of violation of written deficiencies in TILDS, those

claim are preempted under TILA.

**IV.  Plaintiffs' Claim for Breach of Contract**

   Plaintiffs' TAC alleges the terms of the loan contract ("Note") provided that the

borrower promised to "Pay principal and interest by making a payment every month."

Plaintiffs contend that, as a consequence of that provision, the payment schedule disclosed in

16

the TILDS reflects Defendants' obligation to apply each monthly payment to both principal

and interest.  The basis of Plaintiffs' claim is that, instead of applying a portion of each

payment to outstanding principal, the interests rates were raised while the payments were left

the same and the difference between principal paid and principal accrued each month was

added back to the principal balance; a process termed reverse amortization.  Plaintiffs

contend that Defendants' failure to apply each monthly payment to principal as well as

interest as promised in the Note constitutes a breach of the terms of the Note.

Of some importance to this action, Plaintiffs allege in paragraph 121 of the TAC:

> . . . Defendants immediately raised Plaintiffs' and the Class members' interest rates and applied ***no part*** of Plaintiffs' or the Class members' payments to the principal balances on their loans.  In fact, because Defendants charged more interest than was agreed to, the payments, as disclosed by Defendants, were insufficient to cover the interest charge and thus principal balances increased (which is the negative amortization built into the loan).

Doc. # 90 at ¶ 121(emphasis in original).  Based on the foregoing, the court concludes that

Plaintiffs have alleged, albeit somewhat minimally, that Defendants' breach consists of both

raising the interest rates charged in violation of the Note and misapplying the monthly

payments to interest only.

Defendants contend that the Note plainly and unambiguously sets forth the possibility

of reverse amortization and that Note clearly and unambiguously states that monthly

payments will be applied first to interest then to principal.  Defendants argue that the Note,

taken as a whole, clearly indicated both the possibility of reverse amortization and the

conditions that would produce reverse amortization.  Defendants contend Plaintiffs'

argument is an attempt to manufacture ambiguity where there is none.

Resolution of contractual claims on a motion to dismiss is proper if the terms of the

contract are unambiguous. Monaco v. Bear Stearns Residential Mortgage Corp., 554

F.Supp.2d 1034, 1040 (C.D.Cal.2008) ("Monaco").   A contract provision is ambiguous

when it is capable of two or more constructions both of which are reasonable. Bay Cities

Paving & Grading, Inc. v. Lawyers Mutual Ins. Co., 5 Cal.4th 854, 867 (1993). Courts will

not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. Id. Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. Id.; see also Bank of the West v. Superior Court, 2 Cal.4th 1254, 1265 (1992). Under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Navarro v. Mukasey, 518 F.3d 729, 734 (9th Cir.2008) (citing California Civil Code § 1641). "A contract must be so interpreted to give effect to the mutual intentions of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Id., (citing California Civil Code § 1636). "It is well settled that '[w]here there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.'" Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc., 971 F.2d 272, 279 (9th Cir.1992), cert. denied, 507 U.S. 914 (1993).

Plaintiffs allege that the Note, because it is a standardized, pre-printed contract imposed by a party having superior bargaining power on a party having inferior bargaining power, is a contract of adhesion. "'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" Armendariz v. Foundation Health Psychcare Services, Inc.," 24 Cal.4th 83, 113 (2000). "[A] contract of adhesion is fully enforceable according to its terms," except that "[t]he rule requiring the resolution of ambiguities against the drafting party 'applies with peculiar force in the case of a contract of adhesion.'" Graham v. Scissor-Tail, Inc., 28 Cal.3d 807, 819  n.16 (1981). However, "[t]here are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him . . . .  The second – a principle of equity applicable to all contracts generally – is

that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.'" Id. at 819-820.

A number of courts in this circuit have addressed the question of whether a claim for breach of contract will lie on facts that are very similar to the facts of the instant case. The resulting decisions appear to be a mixed bag. The court has reviewed the following cases: Monaco, 554 F.Supp.2d 1034; Velasquez v. GMAC Mortgage Corp., 605 F.Supp.2d 1049 (C.D. Cal. 2008); Elvin v. American Home Mortgage Invest. Trust, 2009 WL 839930 (E.D. Cal. 2009).; Jordan v. Paul Financial, LLC, 644 F.Supp.2d 1156 (N.D. Cal. 2009); O'Donnell v. Bank of America, 2009 WL 765670 (N.D. Cal. 2009); Reyes v. Downey Savings & Loan Ass'n., 541 F.Supp.2d 1108 (C.D. Cal. 2008); and Plascencia, 583 F.Supp.2d 1090. Each of these cases deals with allegations of breach of contract claims in the context of Option - ARM loan agreements. In each of these cases, the courts assessed the plaintiffs' claims that their breach of contract claims should not be dismissed because the contract language permitting the defendants to raise loan rates and apply all payment proceeds to interest was ambiguous.

In three of these cases; Monaco, Velasquez, and Reyes, district courts declined to grant motions for dismissal of breach of contract claims finding that the terms of the loan agreements were ambiguous. In Monaco, the court found ambiguity both with respect to how interest rates were to be calculated and with respect to how the payments would be applied. Monaco, 554 F.Supp.2d 1041 - 1042. In Velasquez, the court found the terms of the loan agreement ambiguous with respect to calculation of the interest rate but not with respect to the application of the loan payments. Velasquez, 605 F.Supp.2d at 1070 - 1071. In the remaining four cases dismissal of breach of contract claims was granted. With the exception of the district court's opinion in Reyes the opinions in the cases cited above are extensive enough to permit this court to conclude that the loan contracts in question were very similar

to one another and very similar to the Note in this case.  The court has looked carefully for a factual basis for the differences in outcomes of the cases listed and can find none.  It appears to this court that the differences in outcomes between the cases simply reflects the fact that the issue is a close one and some courts are more willing to see ambiguity in a contract of adhesion than others.

     For purposes of the resolving the motion presently before the court, however, there is a single factual distinction between the instant case and each of the cases cited above (to the extent those cases adequately set forth facts to allow such comparison) that compels this court to deny dismissal of Plaintiffs' contract claim.  Both this case and each of the cases cited above, except for Reyes, allege that the interest rate charged after the period for the introductory "teaser" rate had lapsed, was a result of the sum of a fixed *margin rate*, usually between 2% and 4%, and an "index rate" which is based on monthly indices published by the Federal Reserve Board.  Those of the cases cited above that documented the terms of the loan agreements each note that the loan agreement provided for both a margin rate and an index rate.  See, e.g., O'Donnell, 2009 WL 765670 at *2 (quoting loan agreement as providing interest rate was equal to LABOR Annual Monthly Average plus 2.125%); Jordan, 644 F.Supp.2d at 1160 (agreement quoted as providing the rate was equal to the "current index" plus 3.525%; Elvin, 2009 WL 839930 at *12 (agreement quoted as providing rate equal to "Current Index" plus 3.440%).

     The court has diligently searched the Note submitted by Plaintiffs' as an attachment to their Second Amended Complaint[2] and can find no reference to a margin rate, nor has any loan document been submitted by Defendants that would indicated that there was an agreement that a margin rate component would be added to the interest rate.  The court also notes that Note, on its face, does not appear to specify any interest rate with particularity

---

[2]     The Note does not appear to have been attached to the TAC.  The court assumes for present purposed that the Note is incorporated by reference into the TAC.

other than the 1% teaser rate.  The TILDS that is attached to the NOTE indicates an Annual Percentage Rate of 5.771% for purposes of computation of the finance charges on the loan over its lifetime, but does not indicate how this percentage is derived or when it is to be applied to the principle amount.  The court concludes that, at a minimum, the Note is ambiguous with respect to the calculation of the interest rate.  While the Note is not ambiguous with respect to the fact that payments under the Note are to be applied to interest first and to principal only if the payment is in excess of the interest due, the Note is ambiguous at least with respect to what rate of interest applies on any given month.

While the court will deny Defendants' motion to dismiss Plaintiffs' breach of contract claim, the court notes that its decision restricts to some extent Plaintiffs' ability to recover on a breach of contract claim.  Should Plaintiff ultimately be able to show that the Note authorized an interest rate equal to the index rate and nothing more, Plaintiffs might be able to recover for breach to the extent an interest rate in excess of the amount agreed to was charged.  Plaintiffs cannot recover on a breach of contract theory to the extent interest rates legitimately charged on the principal were larger than the monthly payments resulting in reverse amortization.

The court also finds that the Note is ambiguous with regard to the timing of rate changes, at least for the first year.  In subsection 2(A), the Note states "I will pay at a *yearly* [interest] rate of 1.000%."  Doc. # 43 at 48 (italics added).  Subsection 2(B) provides that the first day of every month is the "Interest Rate Change Date" and that the interest rate is to be adjusted according to changes in the index on that date.  In common parlance, a "yearly" rate does not change "monthly."  This ambiguity is reenforced by the fact that, pursuant to subsection 3(C), payments do not change for the first time until 12 months have elapsed. While the issue with respect to timing of rate changes for the first year is close and has been the subject of disagreement between courts, this court finds that the ambiguity is sufficient for present purposes to warrant denial of the motion to dismiss.

21

**IV. Unjust Enrichment**

Plaintiffs' claim for unjust enrichment is based on their allegation that One West has been the recipient of payments due under the Note and has been enriched unjustly to the extent One West has profited from payments that are not authorized by the Note.  Because the court will deny Defendants' motion to dismiss Plaintiffs' claim for breach of contract, Defendants' motion to dismiss Plaintiffs' claim for unjust enrichment will also be denied.

## CONCLUSION AND ORDER

The court will deny Defendants' motion to dismiss in its entirety.  To a large extent, the court's denial of the motion to dismiss is the product of both the absence of specific information at the present time and the court's duty to construe the complaint liberally and resolve all ambiguities in Plaintiffs' favor.  The court denies Defendants' motion to dismiss without prejudice and subject to the understandings and presumptions set forth herein.


THEREFORE, it is hereby ORDERED that Defendants' motion to dismiss is hereby DENIED in its entirety.


IT IS SO ORDERED.

**Dated:      February 18, 2010                          /s/ Anthony W. Ishii          **
                                               CHIEF UNITED STATES DISTRICT JUDGE

22